**UNITED STATES DISTRICT
COURT DISTRICT OF
MASSACHUSETTS**

---

MARK BRAY

       Plaintiff,

v.

WORCESTER POLYTECHNIC INSTITUTE,
et al.,

       Defendants.

Case 4:21-cv-40049-TSH

---

## <u>MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS'</u>

## <u>MOTION TO DISMISS ALL CLAIMS WITH PREJUDICE</u>

Plaintiff Bray respectfully submits this memorandum of law in opposition of Defendants' motion to dismiss in its entirety Plaintiff Mark Bray's Second Amended Complaint for Damages and Jury Demand.

## INTRODUCTION

Plaintiff Mark Bray ("Bray") hereby submits this Memorandum in Opposition to the Motion to Dismiss ("Motion") submitted by Defendants Worcester Polytechnic Institute ("WPI") and Laurie Leshin ("Leshin"). The Defendants seek to dismiss all Counts of the Verified Complaint. Bray opposes the Motion to Dismiss for the reasons set forth below.

## LEGAL STANDARD

In considering a motion to dismiss under Massachusetts Rule of Civil Procedure 12(b)(6), the

Court should accept as true all allegations in the complaint, as well as any inferences that may be drawn from the complaint. See e.g., Lantner v. Carson, 374 Mass. 606 (1978); Jones v. Brockton Public Markets, Inc., 369 Mass. 387 (1975). A motion to dismiss should not be granted for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Nader v. Citron, 372 Mass. 96, 98 (1977) (emphasis added). The criteria required for a plaintiff to defeat a motion to dismiss under Rule 12(b)(6) are generous and viewed as a "minimal hurdle" for the plaintiff. Richards v. Arteva Specialties S.A.R.L., 66 Mass.App.Ct. 726 (2006) (quoting Bell v. Mazza, 394 Mass. 176, 184 (1985)). This standard was clarified following the Supreme Court's decision in Bell Atl. Corp. v. Twombly (550 U.S. 544 (2007)) to state that a complaint should include factual allegations suggesting an entitlement to relief. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1969). Nevertheless, "dismissals on the basis of pleadings, before facts have been found, are discouraged." Gennari v. City of Revere, 23 Mass.App.Ct. 979 (1987).

Defendants cite no valid authority to support the proposition that missing ingredients to warrant a motion to dismiss are, in fact, required in the Bray's Complaint. Federal Rule of Civil Procedure 8(a) states that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The Supreme Court has explained that a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); accord Atchison, Topeka & Santa Fe Ry. v. Buell, 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint"). "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.'" Epos Tech., 636 F. Supp.2d 57, 63 (D.D.C. 2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)). Thus, the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts or specific economic losses sustained. Accordingly, Defendants' Motion would be considered properly filed only "where a plaintiff's complaint is 'unintelligab[le] Epos Tech., 636 F. Supp. 2d at 63 (citations omitted). The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims. See Swierkiewicz, 534 U.S. at 512.

**ARGUMENT**

Bray's Complaint is clearly sufficient to withstand the Defendants' motion to dismiss. The allegations in the Complaint support Bray's claim that he entered into an enforceable contract with the Defendants, when Defendants promised they would allow a fair disciplinary process to occur. Viewing all facts set forth in the Complaint as true and in a light most favorable to the plaintiff, Defendants have failed to meet their burden of showing that Bray is not entitled to any relief. The Defendants' motion also asks the Court to determine conclusions of law that are more appropriately addressed by a finder of fact.

**BRIEF SUMMARY OF DISPUTED FACTUAL ALLEGATIONS**

**Student Code of Conduct**

The parties appear to be in agreement with a student Code of Conduct existing between the parties.  https://www.wpi.edu/offices/dean-students/code-of-conduct. This Code of Conduct was an adhesion contract.  It was given to Bray with no opportunity to negotiate the terms. Importantly. the adhesion contract outlines a process to appeal sanctions by the Campus Hearing

Board, **but not the findings**.  This is significant in that Bray is currently applying to medical school and one question on the primary applications asks whether the student has received any discipline while in college.   Currently Bray would have to answer in the affirmative, thus ending any possibility of seeking admission to almost all, if not all, medical schools.

There are definite disputes as to material facts which the Defendants have presented in their motion.

### Discipline

Briefly, in February 2021, E.S., a student at WPI, filed an internal disciplinary complaint against another student, Plaintiff Mark Bray ("Bray"), alleging that he had groped her breast at an off- campus party on the night of November 7, 2020.  Bray maintains this as an incident about which he has no memory.  Defendants have asserted Bray stated that he felt guilty over the idea that anything like the described incident may have happened.  Defendants cite that Bray spoke with E.S. and apologized if in any way she was uncomfortable.  However, at no time did Bray admit the event occurring and an apology was taken by the WPI Campus Hearing Board ("CHB") as an admission of liability.  There is a dispute as to the actual date of the event and whether the complainant is referring to the same incident in question.  ES's complaint lists the date of the event as November 8, 2020.  However, the Motion to Dismiss by Defendants' counsel lists the date as November 7, 2020.  After some initial discussion between Bray and Defendants, CHB hearing was called. Prior to the hearing, Bray was repeatedly and emphatically advised by the case officer to reduce the number and scope of witnesses he intended to present to facilitate a short hearing.  These witnesses would have testified that they did not see the incident in question, although each was at the party in question.  Bray was not allowed to see a written document concerning the Student Code of Conduct until mid-March 2021, which was shortly before the CHB hearing.  During this

time, the primary communication occurred with Dean Perlow, who was well known to the Complainant, but not Bray, as Perlow and the Complainant had worked closely on prior disciplinary proceedings for other students.

Bray received written notice via email of the scheduling of a CHB hearing on April 22, 2021. Bray was offered a staff member, Tracy Baldelli, to serve as his advisor, and Bray met with Ms. Baldelli twice (once in early March 2021, and once a few days before the April 22 hearing). Baldelli failed to appear at the CHB hearing.

At the hearing, Bray was interrupted multiple times during this opening statement and was not given the opportunity to cross examine key witnesses as to material events which would have exculpated him from negative findings asserted by the CHB against him. The chair of the CHB panel had a prior relationship with the accuser, for which she sat on the CHB in other disciplinary cases.  At no point did the panel chair offer to recuse himself.

Following the hearing, the CHB Panel Found Bray Responsible and Issued Sanctions.  In the interim, Leshin issued a statement linking Bray to sexual misconduct.  The CHB panel deliberated and found Bray responsible for violating each of the three policies identified in the charge. Am. Compl. at ¶ 76; Tr. at p. 176. The CHB panel issued four sanctions to Bray, each of which is set forth in the Code as a potential sanction.  *Compare* Am. Compl. at ¶ 189 with Code, Sections V.K.3, 5, 6, 9, and 15.

### Post CHB Actions

Bray then was forced to file a lawsuit to appeal both the sanctions, and even more importantly, the findings issued by the CHB as no appeal process to reverse the findings exists within the Defendant's procedures.  During the appeal process, Defendants made it clear there was no possibility to appeal the CHB findings.

Following the CHB's findings, Bray received his engineering degree from WPI with honors. Am. Compl. at ¶ 237 (p. 43).  Vice President Clay modified the sanctions imposed by the CHB by vacating them and "recommend[ing], but [] not mandating, the relief requested by the complainant during the hearing regarding educational opportunities." *Id.* Vice President Clay also stated that given his decision, the Registrar had "added [Bray's] name to the list of students who have completed their degree requirements and will be voted on by the Faculty at the final Faculty meeting of the year scheduled for May 27, 2021." *Id.* Vice President Clay concluded his decision stating:

Pursuant to the Code of Conduct, Section N ("Record Keeping and Reporting"), the Dean of Students Office will retain your conduct record for two (2) years following your date of graduation from WPI and will report your conduct record only with your permission upon request, and in accordance with applicable state and federal laws and regulations.

Your academic transcript will not reflect the existence, or outcome of, a student conduct proceeding.


**ARGUMENT**

    **A.**      **Legal Standards**

After separating the true factual allegations from mere legal conclusions, the court must determine whether those allegations suggest a plausible claim to relief.  In conducting this "context specific" inquiry, "the reviewing court [must] draw on its judicial experience and common sense." *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013), quoting *Iqbal,* 129 S.Ct. 1940. *See also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  "In performing [its] review, [the court] … can consider (a) implications from documents attached to

or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in plaintiff's response to the motion to dismiss." *Schatz*, 669 F.3d at 55-56. (Internal quotation marks and footnotes omitted).

"Plausible … means something more than merely possible." *Schatz*, 669 F.3d at 55. *See also Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 717 (1st Cir. 2014). "And a complaint that 'pleads facts that are "merely consistent with" a defendant's liability … "stops short of the line between possibility and plausibility." ' " *Ocasio–Hernández,* 640 F.3d at 12, quoting *Iqbal,* 129 S.Ct. at 1949. "The factual allegations must 'raise a right to relief above the speculative level … [based] on the assumption that all the allegations in the complaint are true….' " *Galiastro*, 467 Mass. at 165.

However, although the plausibility standard is more demanding than the former "prove no set of facts" approach, the bar remains fairly low. All that is required is that the, "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Even if such an inference is "plausible but inconclusive," the claim survives. *Rodriguez-Vives*, 743 F.3d at 286. *See also Decotiis v. Whittemore*, 635 F.3d 22, 35 (1st Cir. 2011).

The plausibility standard "does not demand a high degree of factual specificity." *Garcia-Catalan*, 734 F.3d 100, 103 (1st Cir. 2013). The "plaintiff need not show that its allegations … are more likely than not true." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 46 (1st Cir. 2013). *See also Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010) ("*Twombly* cautioned against thinking of plausibility as a standard of likely success on the merits").

The plaintiff also need not establish a *prima facie* case.  According to the court in *Carrero-Ojeda* complaint need not plead facts sufficient to establish a *prima facie* case or "allege every fact necessary to win at trial to make out a plausible claim. The *prima facie* standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint. 755 F.3d at 718.  (Internal quotation marks and citations omitted).  However, the "elements of a *prima face* case remain relevant to [the] plausibility assessment, as [those] elements are part of the background against which a plausibility determination should be made." *Id.* (Internal quotation marks omitted). "[R]eference to the *prima facie* elements can help a court determine whether the "cumulative effect of the complaint's factual allegations" is a plausible claim for relief. *Id.*

Nor may the court disregard a properly pled factual allegation merely because the court disbelieves it, finds it doubtful or unlikely to be supported by evidence at trial.  The court must assume factual allegations to be true "even if doubtful in fact" *Galiastro*, 467 Mass. at 165.  "[T]he court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable.  Indeed, a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely. Ultimately, [t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint.  *Medina-Velazquez v. Hernandez-Gregorat*, 767 F.3d 103, 109 (1st Cir. 2014).  (Internal quotation marks and citations omitted).  *See also Twombly,* 127 S.Ct. at 1965 ("Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations." (Internal quotation marks omitted)); *Evergreen*, 720 F.3d 33, 45 (1st Cir. 2013).

Moreover, the court may not conclude that a plaintiff's factual allegations fail to establish a plausible claim simply because the court deems a different factual scenario *more* plausible. The question at the pleading stage is not whether there is a plausible *alternative* to the plaintiff's theory; the question is whether there are sufficient factual allegations to make the complaint's claim plausible…. [T]here may … be more than one plausible interpretation of the defendant's words, gestures, or conduct. Consequently, although an innocuous interpretation of the defendants' conduct may be plausible, that does not mean that the plaintiff's allegation that that conduct was culpable is not also plausible…. [O]n a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder. *Evergreen*, 720 F.3d at 45-46, quoting  *Anderson News, LLC v. American Media, Inc.,* 680 F.3d 162, 189-90 (2d Cir.2012).

Also relevant is whether, in the court's view, any factual shortcomings of the complaint are reasonably likely to be remedied through discovery.  An important purpose of a motion to dismiss is to save the defendant from incurring the costs of discovery before being able to dispose of the matter.  The plausibility test "helps keep defendants from wasting time and money in discovery on largely groundless claims." *Schatz*, 669 F.3d at 56.  (Internal quotation marks omitted).  The discovery issue is important in this case in that many sources have come forward in after the complaint was filed alleging similar discriminatory tactics by Defendants in similar disciplinary cases.

"[T]he plausibility inquiry properly takes into account whether discovery can reasonably

be expected to fill any holes in the pleader's case." *García–Catalán v. United States,* 734 F.3d 100, 104 (1st Cir.2013). To clear the plausibility hurdle, a complaint must contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" sufficient to flesh out a viable claim. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955. *Butler v. Balolia*, 736 F.3d 609, 617-18 (1st Cir. 2013). Accordingly, the plausibility test may be applied less rigorously in certain cases where, "a material part of the information needed is likely to be within the defendant's control" and can therefore be obtained only via discovery. *Garcia-Catalan*, 734 F.3d 100, 104 (1st Cir. 2013).

**B. Bray States a Claim of Housing Discrimination under G.L. c. 151B (Count I)**

After Bray was found responsible for violating WPI's Code, he was placed in temporary housing, without the ability to negotiate a different location, in a high risk area of WPI where students who tested positive for COVID-19 or were in close contact with a person who tested positive were housed.

Claims for housing discrimination under G.L. c. 151B may be brought based on disparate treatment or disparate impact. *See Burbank Apartments Tenant Ass'n v. Kargman*, 474 Mass. 107, 121 (2016) (recognizing that disparate impact claims, in addition to disparate treatment claims, are cognizable under G.L. c. 151B, consistent with the federal Fair Housing Act). Bray has identified a practice that had a discriminatory impact. He was placed in a COVID-19 rich environment where he just as well could have been relocated to another form of housing. Bray also plead a disparate treatment claim. *Schonton v. MPA Granada Highlands LLC*, No. 16-cv- 12151-DJC, 2020 WL 1062948, at *5 (D. Mass. Mar. 5, 2020) (internal quotations omitted).

In this case, similarly situated parties were treated differently than Bray. *See id.*

Other students were housed in areas outside the COVID-19 positive site. This campus sponsored and approved location was created for the COVID-19 positive students in order to isolate them from the majority of the student body, not as a disciplinary area to incarcerate punished students in a high risk area of a disease which has significant morbidity and mortality. This in itself is dispositive of Bray's claim of housing discrimination.

### C. Bray States a Claim for Libel (Count II)

"To establish a claim for libel, a plaintiff must prove: (1) a defamation, (2) of and concerning the plaintiff, (3) made public, (4) that the defamation was false, and (5) that plaintiff was damaged as a result." *Cignetti v. Healy*, 89 F. Supp. 2d 106, 126 (D. Mass. 2000) (citing *Peck v. Wakefield Item Co.,* 280 Mass. 451, 454 (1932)). All three elements were made here.

WPI's President, Leshin, emailed a former WPI student, Brandon King, stating, in its entirety, as follows:

Dear Brandon,

Thank you for reaching out to me – I am grateful to you and others who have offered their perspectives. As a result, I will meet with the leaders of the Alumni of Color Association next week to better understand their concerns, which mirror those you have expressed in your email.

WPI does not comment on judicial cases, especially those that are still in process. But I can remind you that WPI takes all allegations of sexual misconduct and reports of racism very seriously. Each case is thoroughly investigated and reviewed, and we work hard to fulfill our responsibility to support all students.

These are challenging times, and this situation is complex. Still, I do believe we

are making progress. WPI is continuing our efforts towards becoming an even more inclusive campus – one that values all voices. This is a process that greatly values peaceful expressions of concern, and I hope your voice will be part of future discussions.

The President's email does indeed link Bray to sexual assault, particularly given the totality of the circumstances given the extensive publicity in this case. Leshin's email directly links Bray to sexual assault and has caused him tremendous embarrassment and public humiliation.

The statement by Lashin was made at a definite time.  It was published to a specific individual.  It is false and it is seen in the follow up overturning of the CHB sanctions that the Defendants felt Bray was given an unfair result.  The argument that Bray acknowledges the campus hearing board findings is without merit.  These were findings made with no ability to appeal the actual negative findings - only the sanctions which were ultimately overturned.  In short, it is ridiculous to proffer that because Bray admitted to the campus hearing board decision, there could not have been a libelous statement by Leshin.  Moreover, in their response Defendants make no reference to the statement being truthful.  In short, it is because the statement by Leshin itself is defenseless when it is seen that there is no mechanism by WPI or Leshin to overturn actual findings by the CHB.

**D. Bray States a Plausible Claim for Breach of Contract against WPI and its President (Count III), and  a Violation of the Covenant of Good Faith and Fair Dealing (Count IV)**

Bray has established that a contract existed between he and the Defendants. There were oral statements made by Defendants to Bray prior to and outside of the Campus Review Board

hearing that if he brought in numerous witnesses from the party in question, that would be held against him.   There is a dispute as to the actual agreement between the parties and how a unilateral modification in effect occurred by WPI steering Bray away from enforcing his rights under the adhesion contract.  It is a well-settled rule of contract interpretation that to determine "whether an agreement is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning." W.P. Assocs. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994). Only when an agreement is "reasonably and clearly susceptible" to more than one interpretation is it deemed to be ambiguous.  See Rotelli v. Catanzaro, 686 A.2d 91, 94 (R.I. 1996). "If the terms are found to be unambiguous, however, the task of judicial construction is at an end and the parties are bound by the plain and ordinary meaning of the terms of the contract." Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249, 1259 (R.I. 2003). See Capital Properties, Inc. v. State, 749 A.2d 1069, 1081 (R.I. 1999); Rivera v. Gagnon, 847 A.2d 280, 284 (R.I. 2004).

In interpreting contractual terms, courts look at the intent of the parties. Capital Properties, Inc., supra. When the intentions of the parties can be clearly inferred from the terms of the contract, the court will enforce those intentions as long as they "can be fairly carried out consistent with settled rules of law." Ibid., quoting from Hill v. M.S. Alper & Son, Inc., 256 A.2d 10, 15 (R.I. 1969).

Notably, when a contract is clear and unambiguous, the parol evidence rule bars admission of extrinsic evidence "that would purport to contradict or modify the express terms of the written contract." Samos v. 43 East Realty Corp., 811 A.2d 642, 643 (R.I. 2002), quoting from Egidio DiPardo & Sons, Inc. v. Lauzon, 708 A.2d 165, 176 (R.I. 1998). See Supreme Woodworking Co. v. Zuckerberg, 107 A.2d 287, 290 (R.I. 1954).

It is a well-established principle of Massachusetts law that "where a party against whom enforcement of an oral contract is sought has made a material misrepresentation, that party may be estopped from raising the statute of frauds defense." Frederick v. Conagra Inc., 713 F.Supp. 41 (1989), quoting Greenstein v. Flatley, 19 Mass.App.Ct. 351, 356 (1985).

In this case, the Defendant WPI made extensive oral statements to Bray, including assuring him that things would go better for him if he didn't call many witnesses. Bray clearly relied on the statements that he shouldn't call a number of witnesses, to his detriment. Because of those misrepresentations upon which Bray relied to his detriment, Bray did not take other action that could have helped his CHB hearing, such as calling other witnesses or even calling an attorney to represent him. Even if the Defendants deny that their oral representations were sufficient to invoke the estoppel doctrine, these are genuine issues of material facts that are in dispute.

The Defendants' claim that Bray has failed to state a claim for breach of the implied covenant of good faith and fair dealing is based primarily on their assertion that an enforceable contract did not exist between the parties. Bray has clearly demonstrated that an enforceable contract did exist. This Court, however, does not need to reach such a conclusion at this stage. There is sufficient dispute between the parties as to the material facts needed to establish a contract claim that a dismissal of the claim would not be appropriate. Therefore, the claim for breach of the covenant of good faith and fair dealing should not be dismissed.  If the Court should ultimately find that a contract existed, the present facts demonstrate the very definition of a breach of the covenant of good faith and fair dealing. As the university upon which Bray attended and the president of such university, the Defendants clearly owed a duty of care to Bray. The disparity in bargaining power between the two parties is immense.  T.W. Nickerson, Inc. v. Fleet National

Bank to defines the covenant, stating that "the covenant of good faith and fair dealing requires that 'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract." 456 Mass. 562, 570 (2010) citing Anthony's Pier Four, inc. v. HBC Assocs., 411 Mass. 451, 471-472 (1991). Taking all facts in the Complaint as true and in the light most favorable to Bray, the Defendants' actions in this case – assuring that discipline would occur and Bray would have no opportunity to appeal any findings – effectuated a full destruction of Bray's rights. Following this decision to issue negative findings and sanctions, Bray was left with no remedy other than the filing of a suit to enforce his rights. Even if the Court determines that an enforceable contract did not exist between the parties or that Defendants followed their obligations, Bray's claim that Defendants breached the covenant of good faith and fair dealing should endure a motion to dismiss. Courts have found that the covenant attaches in instances of promissory estoppel. See Loranger Const. Corp. v. E.F. Hauserman Co., 376 Mass. 757 (1978). Courts have enumerated a standard that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.... Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Cadle Co. v. Vargas, 55 Mass.App.ct. 361 (2002) (internal citations omitted).

While Defendants argue deference is afforded to colleges and universities in discipline matters, reversal of disciplinary findings has not been addressed by any case cited by Defendants. *See Gluckenberger v. Boston Univ.*, 974 F. Supp. 106, 150–51 (D. Mass. 1997); *Schaer v. Brandeis Univ.*, 432 Mass. 474, 482 (2000)

omitted); *see also* Order at p. 12 ("It is important to allow [colleges and universities] to maintain their right to pursue disciplinary proceedings in accordance with stated policies and procedures such as WPI has done in this case").

Bray has added Leshin to the claim for breach of contract, as the parties are in privity of contract and WPI and Leshin, WPI's president, are so intertwined that it is impossible to separate one from the other.

### 1. WPI's President is a Party to Any Contract Between Bray and WPI.

Massachusetts law recognizes that the relationship between a student *and a college* is "contractual in nature and the terms of the contractual relationship can be derived from student policy manuals." *Doe v. Stonehill Coll., Inc.*, No. CV 20-10468-LTS, 2021 WL 706228, at *12 (D. Mass. Feb. 23, 2021). Defendant Leshin is a high level agent of WPI.  She is the president and holds ultimate authority to overturn a CHB decision.  Leshin and WPI are in privity of contract and thus hold a contractual relationship with Bray. *First Choice Armor & Equipment, Inc. v. Toyobo America*, Inc., 2012 WL 834123 (D. Mass. Feb. 17, 2012)

While student-college relationship does not necessarily create contractual obligations between a student and a college administrator, here Leshin is the president of the college. *See Bagley v. Hoopes*, No. CIV. A. 81-1126-Z, 1985 WL 17643, at *8 (D. Mass. Aug. 6, 1985) The instant case differs from *Bagley* and other cases Defendants cite in that Leshin is the highest level employee of WPI.  Accordingly, Bray's claim for breach of contract against both defendants should succeed.

### 2. WPI Failed with its Contractual Obligations to Bray and Failed to Afford Him Basic Fairness.

"Under Massachusetts breach of contract law as to private academic institutions, two tests are relevant to [a] breach of contract claim          The first test looks at the terms of the contract established between the college and the student and asks whether the reasonable expectations of the parties have been met." *Doe v. Trustees of Boston Coll.*, 942 F.3d 527, 533 (1st Cir. 2019). In this case, Bray expected, but was not offered, a fair process whereby he could call witnesses and not be steered away from calling certain members present at the party in question.  Moreover, he was not afforded the opportunity to cross examine witnesses as to the specific events, including evidence regarding the sexual history of the complainant on the night in question – evidence which if articulated to the CHB would have exonerated Bray.

The second test concerns whether the procedures followed during a disciplinary hearing were conducted with "basic fairness." *Doe v. Stonehill Coll., Inc.*, 2021 WL 706228. When taken in light most favorable to Bray, the evidence demonstrates WPI did not meet the reasonable expectations of its Code in conducting Bray's hearing before the CHB panel and did not afford him basic fairness.

Bray was not offered a copy of the Code until mid-March 2021, only a few weeks before the CHB hearing and several months after the investigation began, which he asserts was a "direct violation" of the Code. Am. Compl. at ¶¶ 39, 46, 52, 222 (p. 41). Within the contact there is an implied covenant of good faith and fair dealing.  Defendants argue Bray does not and cannot identify any provision of the Code that required WPI to "give" Bray a physical copy of the Code. However, Defendants gloss over the fundamental breach in good faith offered here.

Bray  was "never offered an advisor of his choice per Section V (4)(a) of the WPI Student Code of Conduct" and "never had the opportunity (sic) to choose his advisor in the disciplinary proceeding." Am. Compl. at ¶¶ 50–51.  The initial advisor offered to Bray wasn't entirely familiar

with the CHB process.  The advisor did not accompany Bray to the actual CHB hearing as well. As such, Bray was entirely overmatched by a complainant who was quite familiar with the CHB process.  These allegations further underscore the lack of good faith and fair dealing afforded to Bray.

### 3. WPI failed to use the preponderance of the evidence standard or to allow presentation of evidence including cross-examination of key witnesses

During his hearing Bray asserts, no "reasonable individual" could have found that the panel's finding of responsibility was supported by a preponderance of the evidence.[24]  Am. Compl. at ¶¶ 64, 70, 105, 223 (p. 36).  At no point in the CHB hearing did any witness testify as to actually seeing Bray grope the complainant's breast.  Moreover, Bray was never offered, nor does one exist, an opportunity to overturn the CHB findings

Bray alleges that Dean Greg Snoddy "recommended" that Bray should not present and examine "each student present at the party from the night of November 7, 2020," and that, because of this recommendation, Bray "in effect" was "not afforded the full opportunity to present witnesses at the CHB." Am. Compl. at ¶¶ 29–31.  Bray was absolutely steered away from calling certain witnesses with material knowledge of the party in question.  Eight witnesses were not called to testify.  If the ten members present at the party had been called, presumably all would have stated they did not see any groping by Bray.  This did not occur though.

As to "basic fairness," Bray does state a plausible claim that Defendants did not provide him "some minimum level of fair play."[28] *See Doe v. Stonehill Coll., Inc.*, 2021 WL 706228, at *13; *Sonoiki v. Harvard Univ.*, No. 19-CV-12172, 2020 WL 3416516,  The panel chair knew the complainant well.  The complainant had worked on the CHB in prior cases.  Dean Snoddy also knew the complainant well.  No one was recused from the case.  In short, Bray went into a hearing

behind the eight ball from the start.

"[I]n conducting a basic fairness analysis, the Court examines the conduct of the hearing and the disciplinary process to ensure that a student was not sanctioned arbitrarily and capriciously, that the university acted in good faith and the entire process provided basic fairness." *Sonoiki*, 2020 WL 3416516, at *13. This standard does not require that private colleges and universities provide the sort of due process standards guaranteed to criminal defendants or follow the judicial rules of evidence. *Id.* If taken at their word, Bray's Amended Complaint, the Prehearing Packet, and  the Transcript reflects departure from the requirements of basic fairness.

 Despite Defendants argument, this Court's recent decision in *Doe v. Stonehill* has a different set of facts.   There, Judge Sorokin observed that the plaintiff's allegations demonstrated the college's compliance with basic fairness, namely that the plaintiff was notified of the allegations against him, was "able to explain his side of the story, review the facts section of the report, meet with the investigators, and request follow-up questions or interviews, . . . and he went through a full appeals process." 2021 WL 706228, at *14. Here Bray didn't receive notice of the Agreement until March 2021.  He was outright discouraged from calling witnesses by the same person who had a prior relationship on the CHB panel with the complainant.  He was given an advisor not entirely familiar with the CHB process who didn't appear at the CHB hearing, while the complainant was well known by the CHB, well versed in the process, and worked closely with the CHB chair and dean.  Bray was not able to cross-examine witnesses on certain material facts and was repeatedly cut-off at the hearing.   He didn't have the opportunity at the CHB hearing to ask follow-up questions on several occasions.  The advisor didn't even attend the CHB hearing.  It can be likened to a

criminal defendant not having an attorney represent him in Court.  This doesn't arise to the level of even minimal due process as the Defendants argue in their motion.

**E. Bray Has Stated Claims for Tortious Interference with Business Relationships and Prospective Economic Advantages (Counts V and VI)**

"There are four elements to a claim for intentional interference with contract or advantageous business relations: (1) the plaintiff had a contract or advantageous business relationship with a third party, (2) the defendant knowingly induced the third party to break the contract or to forgo the business relations, (3) the defendant's interference was improper in motive or means, and (4) the plaintiff was harmed by the interference." *Kelleher v. Lowell Gen. Hosp.*, 98 Mass. App. Ct. 49, 54 (2020); *see also Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*, 308 F.3d 25, 47 (1st Cir. 2002).

Bray has a current agreement to attend a post-baccalaureate school in Colorado. This falls within the definition of a specific relationship. *Malden Transp., Inc. v. Uber Tech., Inc.*, 286 F. Supp. 3d 264, 282 (D. Mass. 2017)

At all times, Defendants knew of Bray's acceptance into the Colorado Post-baccalaureate school for the 2021-2022 academic year and Bray's intent to apply to medical school during the 2021-2022 academic year.  Bray receives a stipend in his program.  Prior to the decision to overturn the negative findings against Bray, this was a huge issue for all parties to address.  For the Defendants to argue otherwise is absurd.  *See United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 815 (1990) (affirming standard that a tortious interference claim requires proof not only of intentional conduct but of improper means or motive). There were no vague allegations here.  Bray was specific in his intent to attend the post-baccalaureate program of which he is paid and then medical school with multiple members of the WPI administration.  *See Morales-Cruz*, 676 F.3d at

224; *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013).

### F. Bray Has Stated a Claim for Intentional Infliction of Emotional Distress (Count VII)

To state a claim for intentional infliction of emotional distress (IIED), Bray must allege that (1) Defendants intended, knew, or should have known that their conduct would cause emotional distress; (2) that Defendants' conduct was "extreme and outrageous"; (3) that Defendants' conduct caused emotional distress; and (4) that this emotional distress was severe. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996); *Doe v. Trustees of Boston Coll.*, No. 15-CV-10790, 2016 WL 5799297, at *30 (D. Mass. Oct. 4, 2016). The conduct in this case meets the standard "'beyond all possible bounds of decency'" and is "'intolerable in a civilized community.'" *Doe v. Trustees of Boston Coll.*, 2016 WL 5799297, at *30–31 (quoting *Polay v. McMahon*, 468 Mass. 379, 386 (2014)).

The Defendant's handling of the disciplinary proceedings is tragic.  They issue negative findings and sanctions against Bray, only to later have the sanctions overturned, but with no mechanism to overturn or even appeal the findings.  The Defendants added to the regional publicity by issuing statements to third parties about Bray and linking him to sexual assault.  Instead of stating that they could not comment on the matter, the Defendants issued emailed statements linking Bray to sexual misconduct.  This conduct is the very "targeted, deliberate, and malicious" actions required to maintain an IIED claim. Moreover, it is for the jury to decide whether the facts arise to a level where liability exists for the IIED claim.

This case is similar to the *Alcorn* case where the Court found the "[p]laintiff has alleged facts and circumstances which reasonably could lead the trier of fact to conclude that defendant's

conduct was extreme and outrageous, having a severe and traumatic effect upon plaintiff's emotional tranquility." *Alcorn v. Anbro Eng'r, Inc.*, 2 Cal. 3d 493, 498 (1970). Because reasonable men could differ on these issues, we believe that "it is for the jury, subject to the control of the court," to determine whether there should be liability in this case. *See Id.*

This case differs from the *Doe v. Brandeis Univ.*, 177 F. Supp. 3d at 617 *Watkins v. City of Malden*, No. CV 08-10640-NMG, 2008 WL 11389568, at *4 (D. Mass. Nov. 25, 2008) in that the coverage of the case by Leshin was not accurate. At no time did Bray commit a sexual assault and no mechanism exists to overturn these findings.    Leshin linked Bray to sexual assault  where she just as easily could have stated that  she could not comment on the matter.

### G. Bray Accurately States Claims for Negligent Infliction of Emotional Distress (Count VIII) and Negligence (Count XIII)

 "[T]he elements of negligent infliction of emotional distress [NIED] include: (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Doe v. Trustees of Boston Coll.*, 892 F.3d at 95.  WPI and Leshin owed Bray a duty to complete an investigation in accordance with the Student Handbook.  They also owed Bray a duty to have a mechanism to appeal the findings of a CHB panel.  Neither occurred. While the Defendant argues there is no "independent duty outside of the contractual relationship" between the student and a university. *Doe v. Trustees of Boston Coll.*, 892 F.3d at 95; *see also Doe v. Williams Coll.*, 2021 WL 1178287, at *22, there was never a contractual relationship regarding the ability to appeal findings.  This was never addressed in the student disciplinary handbook.  This separates the current case from *Doe v. Stonehill Coll., Inc.*, 2021 WL 706228, at *14 (dismissing negligence claim against college where plaintiff failed to allege "any

duty of care towards him separate from contractual obligations").   In short, Defendants breached

their duty to Bray to offer such an appeal process to overturn negative findings.  This breach was

the proximate cause of ongoing damages to Bray.  As such, this claim should survive.

**H. Bray Has Stated a Plausible Claim for Violation of Title IX (Count IX)**

Bray does allege facts which would raise an inference of discrimination based on his gender

which had some causal connection to the outcome of his disciplinary hearing.

Bray asserts that his Title IX claim represents a "challenge" to a "facially

discriminatory" policy at WPI that purportedly "giv[es] an in-practice presumption that a woman

is more credible over a man at a campus hearing," does not "place[] both parties on equal footing,"

and does "not allow[] a proper presentation at a hearing of witnesses and a cross examination of

witnesses," which Bray contends creates a "hostile environment." Am. Compl. at ¶¶ 266–268.

Courts have found that if the information sought is obtainable through discovery, the motion to

dismiss should be denied. See, e.g., Towers Tenant Ass'n v. Towers Ltd. P'ship, 563 F. Supp. 566,

569 (D.D.C. 1983) (denying motion for a more definite statement because details such as "dates,

times, names and places" are "the central object of discovery, and need not be pleaded").

Following the regional publicity of this case, many current and former WPI students

involved in the campus disciplinary process have come forward with their own stories of

discrimination within the WPI disciplinary process.   Bray's Amended Complaint sets forth

plausible allegation of gender- based discrimination in the disciplinary process at WPI, which will

be further addressed through discovery.

"[T]he plausibility inquiry properly takes into account whether discovery can reasonably

be expected to fill any holes in the pleader's case." *García–Catalán v. United States,* 734 F.3d

100, 104 (1st Cir.2013). To clear the plausibility hurdle, a complaint must contain "enough fact[s]

to raise a reasonable expectation that discovery will reveal evidence" sufficient to flesh out a viable claim. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955. *Butler v. Balolia*, 736 F.3d 609, 617-18 (1st Cir. 2013).  Accordingly, the plausibility test may be applied less rigorously in certain cases where, "a material part of the information needed is likely to be within the defendant's control" and can therefore be obtained only via discovery.  *Garcia-Catalan*, 734 F.3d 100, 104 (1st Cir. 2013). In this case, the repeated Title IX violations will be within the scope of discovery.

### I. Bray Has Stated a Claim of Discrimination Under the Massachusetts Equal Rights Act (Count X)

To state a claim under the Massachusetts Equal Rights Act (MERA), a plaintiff must allege that the plaintiff was discriminated against based on the plaintiff's membership in a protected class. *See Doe v. Williams Coll.*, 2021 WL 1178287, at *17. With respect to his MERA claim, Bray alleges that Defendants "promulgated rules intentionally, recklessly, and/or negligently that apply exclusively to sex-based harms and that deny the individual Plaintiffs 'full and equal benefit of all laws and proceedings for the security of persons. . . .'" Am. Compl. At ¶ 272. In support of this claim, Bray alleges that "Defendants did not allow Plaintiff to present witnesses at a campus hearing that would have exonerated him, nor did they allow Plaintiff to cross-examine the accuser or other witnesses . . . [concerning] behavior of the accuser in the hours following the alleged incident on November 7, 2020." *Id.* at ¶ 273.

Bray alleges that he was prohibited from presenting witnesses or cross-examining witnesses on certain topics because of his membership in a protected class, both by race and

gender.

### J. Bray's Claim Pursuant to the Massachusetts Constitution Succeeds Because Both WPI and its President are Intertwined State Actors (Counts XI)

Plaintiff points the Court to *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L.Ed. 101 L.Ed.2d 40 (1988).  There a state prisoner claiming serious mistreatment by a doctor, brought a section 1983 suit against the doctor, asserting a claim of cruel and unusual punishment. Assuming deliberate interference, the doctor would have been liable to suit if he had been a full-time state employee.  See *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50L.Ed.2d 251 (1976). The Supreme Court in *West* stated That the result was the same even though the doctor furnished the medical services to prisoners on a part-time basis and technically was an independent contractor with the state rather than a state employee.  487 U.S. at 55-57, 108 S.Ct. 2250.

The reality here is that we are all dependent on private entities for crucial services.  For example, if a city transfers its parks to a private entity that discriminates against minorities, Courts have no problem in finding state action in the transfer and then finding unconstitutional racial discrimination.  A similar analysis can be made here and the motion to dismiss should be denied.

### K. Bray States a Claim of Intentional Discrimination under Title VI (Count XII)

Bray's Title VI claim against WPI's amended Complaint is full of allegations that give rise to an inference that he was subject to intentional discrimination.

Title VI provides that no person shall "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "To prove intentional discrimination in violation of Title VI, plaintiffs may either proffer direct evidence of discrimination or they may allege circumstantial evidence in satisfaction of the burden-shifting framework for Title VII claims under *McDonnell Douglas*. . . ." *Thomas v. Salem State Univ.*, No. CIV.A. 11-10748-DJC, 2013 WL 3404331, at *6 (D. Mass. Jul. 2, 2013). "[P]roof of intent to discriminate is . . . necessary to make out a Title VI violation." *Schmidt v. Boston Hous. Auth.*, 505 F. Supp. 988, 993 (D. Mass 1981). With respect to the *McDonnell Douglas* burden-shifting approach to proving intentional discrimination, "a plaintiff must show that similarly-situated members of the non-protected class received more favorable treatment than the plaintiff received." *Thomas*, 2013 WL 3404331, at *6.

Here, along with the lack of diversity at the CHB hearing along with Bray's placement in a dangerous COVID-19 positive area, combined with the multiple reports in social media posts from former students concerning "cover-ups of accused white men," or "cases reported against white men [in which] no action was taken by WPI" rise to the level of intentional discrimination. Am. Compl. at ¶¶ 231–232 (p. 37); Declaration of Mark Bray in Support of First Amended Complaint, ¶ 7. The question to whether Bray was discriminated is a question for the jury.  These facts in itself are sufficient with Bray's declaration to survive a motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Bray respectfully requests that this Court deny the Defendants' Motion to Dismiss All Claims with Prejudice and also to allow the case to

continue such that the Plaintiff may ask for injunctive relief with respect to the ability to appeal the negative CHB findings.

Respectfully Submitted,

**Mark Bray**

By his attorney,

/s/ Adam Beck
 (BBO# 680913)
dradambeck2010@gmail.com

102 Osgood Street

Andover, MA 01810

978.807.3202

Dradambeck2010@gmail.com

CERTIFICATION UNDER LOCAL RULE 7.1(a)(2)

On August 31, 2021, undersigned counsel for Bray contacted Defendant to indicate an Opposition

to the Defendants Motion to Dismiss and Accompanying Memorandum would be filed with this

Court.  The parties were not able to resolve or

narrow the issues presented by this motion in advance of filing.

Dated: August 31, 2021

/s/ Adam Beck

Counsel for Plaintiff

CERTIFICATE OF SERVICE

On August 31, 2021, the undersigned attorney caused the foregoing Opposition to the Motion to Dismiss with Memorandum to be filed electronically with the United States District Court for the District of Massachusetts, which will be thereby served upon all parties registered to receive notice via the

Court's CM/ECF system, or in the alternative service through the Constable. In addition, the undersigned attorney served both paper and electronic copies of the foregoing Complaint via e-mail and via U.S. mail (first class,

postage prepaid), upon the Defendant in this matter. Defendant's contact information is as

follows:

Scott A. Roberts

**HIRSCH ROBERTS WEINSTEIN LLP**

24 Federal Street, 12th Floor

Boston, MA 02110

(617) 348-4340 (Direct)

(617) 348-4343 (Fax)

www.hrwlawyers.com

Dated: August 31 2021

s/ Adam Beck

Counsel for Plaintiff